


**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 24, 2019**

**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 16-41550-MXM |
| SUSAN MELEA ARLIN, | § | |
| | § | CHAPTER 13 |
| DEBTOR. | § | |

**MEMORANDUM OPINION AND ORDER DENYING TRUSTEE'S
MODIFICATION OF CHAPTER 13 PLAN AFTER CONFIRMATION**
*[RELATES TO ECF 45]*

Before the Court is the *Trustee's Modification of Chapter 13 Plan after Confirmation (Increased Gross Income)* (the "***Plan Modification***")[1] filed by Tim Truman, Standing Chapter 13 Trustee (the "***Trustee***"). The Trustee's Plan Modification seeks to modify the Chapter 13 Plan[2] filed by Susan Melea Arlin (the "***Debtor***") to include funds that the Debtor withdrew from her exempt retirement account after the petition date. The Debtor filed an Objection[3] to the Plan

___

[1] ECF No. 45.

[2] *Debtor's(s') Chapter 13 Plan and Motion for Valuation* [ECF No. 2] (the "***Plan***"). The Plan was confirmed on June 23, 2016. *See Order Confirming Chapter 13 Plan, Valuing Collateral; Allowing Debtor's Attorney's Fees; Providing for a Trustee's Recommendation Concerning Claims and Other Related Matters (With Revisions to the Plan as Specified Herein)* [ECF No. 20] (the "***Order Confirming Plan***").

[3] *Debtor's Response in Opposition to Trustee's Modification of Chapter 13 Plan after Confirmation* [ECF No. 50] (the "***Objection***").

Modification. After considering the Plan Modification, the Objection, the Trustee's oral modification to the Plan Modification– proposed at the hearing –(the "*Oral Plan Modification*"), the Trustee's Brief,[4] the Debtor's Brief,[5] the testimony of the Debtor, exhibits admitted into evidence, and the arguments of counsel, the Court finds and concludes that the Plan Modification and the Oral Plan Modification should be denied.

## I. OVERVIEW

Unforeseen and unanticipated life events frequently cause Chapter 13 debtors to incur material unbudgeted post-petition expenses. Usually debtors in that predicament seek to modify their plans under § 1329 or seek some other form of relief from the court to address such expenses, but other debtors face the unenviable choice between making their Chapter 13 plan payment or using their available cash to pay the unexpected post-petition expenses. The cash-strapped debtors who choose to pay their post-petition expenses often default under their plans and risk possible dismissal of their Chapter 13 cases.

In this case, the Debtor incurred unexpected medical and home-repair expenses, but she had another potential option to address those expenses – the availability of funds in her exempt 401k Plan. The Debtor believed that she could use the funds in her 401k Plan to pay the unexpected expenses outside of her confirmed plan. Therefore, the Debtor unilaterally withdrew all of the available funds in her 401k Plan and paid the medical and home-repair expenses directly. Unfortunately, she did so without consulting her attorneys, notifying the Trustee, or obtaining prior court approval.

---

[4] *Chapter 13 Trustee's [Brief] in Support of Trustee's Modification of Plan Due to Increased Gross Income* [ECF No. 56] (the "***Trustee's Brief***").

[5] *Brief in Support of Debtor's Response in Opposition to Trustee's Modification of Chapter 13 Plan After Confirmation* [ECF No. 67] (the "***Debtor's Brief***").

The Trustee eventually discovered that the Debtor had withdrawn the funds from her 401k Plan, so the Trustee filed the Plan Modification under § 1329, which triggered several questions and disputes, including the impact, if any, the distribution had on the exempt status of such funds. Specifically, the Trustee argued that the exempt retirement funds lost their exempt status and became property of the estate under § 1306, thereby requiring such funds to be paid to the Trustee to increase the Debtor's Plan Base for the benefit of the pre-petition unsecured creditors. In response, the Debtor argued that the distribution of the funds from her exempt 401k Plan did not affect the exempt status of the funds and that she could use the funds as she saw fit. Although the resolution of this dispute appears, at first blush, to be limited and straightforward, the facts in this case produced several procedural and legal implications beyond the exemption issue.

## II.    FACTS

The Debtor filed her *Chapter 13 Petition* and her *Schedules A* through *J* on April 15, 2016.[6] On *Schedule B,* the Debtor listed a 401k plan with a value of $22,467.40 (the "***401k Plan***"). On *Schedule C*, the Debtor sought to exempt the funds in the 401k Plan in the total amount of $22,467.40 (the "***401k Funds***") using the Texas state exemptions.[7] Neither the Trustee nor any other creditor or party-in-interest objected to Debtor's claimed exemption of the 401k Funds. As a result, the 401k Funds became the Debtor's exempt property.

At the hearing, the Debtor testified credibly that in February and May 2017, the Debtor underwent knee surgeries, and then in August 2017 the Debtor underwent foot surgery.[8] In addition to incurring these post-petition medical expenses, the Debtor also incurred expenses to

---

[6] ECF No. 1.

[7] *Id.; see also* Tex. Prop. Code § 42.0021; 11 U.S.C. § 522(b)(3)(A).

[8] Debtor's Ex. F.

repair and replace a fence and outside storage facility on her homestead during the spring of 2017,[9] all of which resulted in substantial and unbudgeted post-petition out-of-pocket expenses. The Court finds and concludes that each of the unexpected and unbudgeted post-petition medical and home repair expenditures were reasonably necessary to be expended for the maintenance or support of the Debtor.

Rather than (i) seeking advice from her attorneys, (ii) seeking the Trustee's prior consent, (iii) filing a proposed plan modification, or (iv) seeking any form of prior Court approval, the Debtor unilaterally withdrew the 401k Funds from her 401k Plan in March 2017, June 2017, and September 2017 totaling $22,900 (the "*Withdrawals*"). Debtor testified that she received from such Withdrawals net proceeds, after taxes, in the approximate amount of $14,000 (the "*Net 401k Proceeds*") and that she used the Net 401k Proceeds to pay the post-petition medical and home-repair expenses directly. The Debtor also testified that she did not roll over any of the Withdrawals to another qualified retirement plan within sixty days of the distribution, thereby incurring the resulting federal income tax liability in 2017.

On or about March 4, 2018, the Debtor and her husband filed their 2017 Joint Federal Income Tax Return (the "*2017 Tax Return*") reflecting total adjusted gross income of $91,160, including $22,900 of taxable income resulting from the Withdrawals.[10] In compliance with this District's Standing Order,[11] the Debtor provided a copy of her 2017 Tax Return to the Trustee. Following the Trustee's receipt of the 2017 Tax Return and based on the *appearance* of a substantial increase in the Debtor's income, the Trustee filed the Plan Modification seeking to

---

[9] Debtor's Ex. E.

[10] Debtor's Ex. C.

[11] *See Standing Order Concerning all Chapter 13 Cases*, General Order 2017-01 dated June 24, 2017 (the "*Standing Order*").

increase the Debtor's Plan payments by $854.00 per month for the remaining thirty-four month plan term resulting in a Plan Base increase of $29,036.00.[12]

Following the filing of the Plan Modification, the Debtor filed *Amended Schedules I and J*[13] and provided the Trustee with updated payment records to reflect, in part, the Debtor's current post-petition income. Based on such additional information and evidence admitted during the hearing, the Trustee proposed the Oral Plan Modification, in the alternative, to request that the Debtor be required to make a lump-sum payment of $22,467.40 to the Trustee. The Trustee argued that such funds lost their exempt status and constitute non-exempt property of the Debtor's bankruptcy estate pursuant to § 1306, thereby justifying a corresponding increase in the Debtor's Plan Base for the benefit of pre-petition unsecured creditors.

Although the parties focused their argument and briefing primarily on the impact, if any, the Withdrawals had on the exempt status of the 401k Funds, the Court must ultimately answer the following two questions: (i) does the Plan Modification or the Oral Plan Modification satisfy the requirements of § 1329; and if so, (ii) in exercising its discretion, should the Court approve either such modification? The short answer to both questions is "no."

### III. ANALYSIS

**A. The Plan Modification and the Oral Plan Modification are not feasible as required by § 1329.**

Based on the *appearance* of a substantial increase in the Debtor's post-petition income reflected in the 2017 Tax Return, the Trustee had a good-faith basis for filing the Plan Modification. Even though the Trustee had a good-faith basis to file the Plan Modification, the Court must determine if that modification or the Oral Plan Modification satisfies the mandatory

---

[12] *See* ECF No. 45.

[13] ECF No. 53; Debtor's Ex. D.

requirements for approval under § 1329. If either modification does, then the Court must still exercise its discretion to determine if the modification should be approved.[14]

Section 1329(a) permits plan modification for four given purposes, one of which is "to increase or reduce the amount of payments on claims of a particular class provided for by the plan."[15] Both proposed plan modifications satisfy § 1329(a). Although the Plan Modification and the Oral Plan Modification satisfy § 1329(a), the modifications must also satisfy § 1329(b) and (c). Section 1329(b)(1) provides in relevant part that "section 1325(a) . . . [applies] to any modification under subsection (a) of this section."[16] And § 1325(a)(6) requires the court to find that "the debtor will be able to make all payments under the plan and to comply with the plan."[17]

   *1. The Plan Modification seeking increased monthly plan payments is not feasible.*

The uncontroverted evidence and credible testimony of the Debtor established that (i) the substantial increase in the Debtor's 2017 taxable income was based solely on the distributions of the available funds from her 401k Plan, and (ii) the Debtor has not received and does not receive increased post-petition monthly disposable income that would enable her to pay the substantial increase in plan payments sought by the Plan Modification. Further, the Trustee offered no evidence to establish that the Debtor had the ability to make the increased plan payments sought by the Plan Modification. Based on the uncontroverted evidence, the Court finds and concludes that the Trustee failed to satisfy his burden to establish that the Plan Modification (to increase the

---

[14] *See In re McAllister,* 510 B.R. 409, 412 (Bankr. N.D. Ga. 2014).

[15] 11 U.S.C. § 1329(a)(1).

[16] 11 U.S.C. § 1329(b)(1).

[17] 11 U.S.C. § 1325(a)(6).

Debtor's monthly plan payments) is feasible as required by §§ 1329(b)(1) and 1325(a)(6).[18] Therefore, the Plan Modification is denied.[19]

> *2. The Oral Plan Modification seeking lump sum payment in the amount of the Withdrawals is not feasible.*

The Trustee also requests, as an alternative, that the Oral Plan Modification be approved to require the Debtor to make a lump sum payment of $22,467.40 to the Trustee. The Trustee asserts that the 401k Funds lost their exempt status when they were distributed and became non-exempt property of the Debtor's bankruptcy estate pursuant to § 1306, thereby justifying a corresponding increase in the Plan Base for the benefit of pre-petition unsecured creditors.

Even if the Trustee's position is correct, the uncontroverted evidence and credible testimony of the Debtor confirm that the entire balance of the Withdrawals has long been spent and is no longer available to the Debtor to pay the requested lump sum payment to the Trustee. Furthermore, the Trustee offered no evidence that the Debtor has sufficient other funds to make the proposed lump-sum payment. Based on the uncontroverted evidence, the Court finds and concludes that the Trustee did not satisfy his burden to establish that the Oral Plan Modification (to require the Debtor to make a lump-sum payment to the Trustee in the amount of $22,467.40) is feasible as required by § 1329(b)(1).[20] Therefore, the Oral Plan Modification is denied.[21]

Because the Plan Modification and the Oral Plan Modification are denied due to lack of feasibility, arguably the Court's work is finished. Concluding the ruling at this point, however, would leave significant underlying issues and disputes between the parties unresolved.

---

[18] *See In re Zavala*, 366 B.R. 643, 655 (Bankr. W.D. Tex. 2007).

[19] To be clear, by finding that the Plan Modification is not feasible, the Court does not condone the Debtor's ill-advised spending of the 401k Funds which caused the Plan Modification to fail. Such actions could have resulted in other adverse consequences for the Debtor, including, but not limited to her bankruptcy case being dismissed for cause under § 1307(c)(6).

[20] *See In re Zavala*, 366 B.R. at 655.

[21] *See supra* note, 19.

Therefore, the Court will address the additional underlying issues and disputes raised by the parties during the hearing and in their post-hearing briefs.

**B.   The 401k Funds lost their exempt status and the Withdrawals became non-exempt property of the Debtor's bankruptcy estate pursuant to § 1306.**

The Debtor opted to use the Texas exemptions rather than the federal exemptions and exempted the 401k Funds pursuant to § 42.0021 of the Texas Property Code.[22] There is no dispute that the 401k Funds were the Debtor's exempt property. There is also no dispute that the Debtor did not roll over the Withdrawals into another qualified plan within sixty days of such Withdrawals.

Even though the Debtor did not roll over the Withdrawals into another qualified plan, the Debtor asserts that the Withdrawals remained her exempt property under Texas law and that she could use the funds as she saw fit. The Trustee, on the other hand, argues that the 401K Funds lost their exempt status protection after such funds were distributed to the Debtor and became non-exempt property of the Debtor's bankruptcy estate pursuant to § 1306(a)(1).[23] To determine the effect, if any, the Withdrawals had on the exempt status of the 401k Funds, the Court must

---

[22] Tex. Prop. Code § 42.0021 provides, in pertinent part:

(a) In addition to the exemption prescribed by Section 42.001, a person's right to the assets held in or to receive payments, whether vested or not, under any . . . retirement account . . . is exempt from attachment, execution, and seizure for the satisfaction of debts to the extent the plan . . is exempt from federal income tax, or to the extent federal income tax on the person's interest is deferred until actual payment of benefits to the person under Section 223, 401(a), 403(a), 403(b), 408(a), 408A, 457(b) or 501(a), Internal Revenue Code of 1986 . . .

(b) amounts qualifying as nontaxable rollover contributions . . . are treated as exempt amounts under Subsection (a).

. . .

(c) Amounts distributed from a plan . . . entitled to an exemption under Subsection (a) are not subject to seizure for a creditor's claim for 60 days after the date of distribution if the amounts qualify as a nontaxable rollover contribution under Subsection (b).

[23] 11 U.S.C. § 1306(a)(1) provides:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title –

(1)   all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

analyze and apply the Texas statute. In doing so, this Court follows "the same rules of construction that a Texas court would apply – and under Texas law the starting point of analysis is the plain language of the statute."[24] "When a statute is clear and unambiguous, Texas courts 'apply its words according to their common meaning in a way that gives effect to every word, clause, and sentence.'"[25] If the "statute's words are unambiguous and yield a single inescapable interpretation, the judge's inquiry is at an end."[26]

Although the words in § 42.0021 of the Texas Property Code appear to be unambiguous, courts do not agree on the interpretation and application of the statute when exempt funds in a retirement plan are distributed. In a chapter 7 case, a Texas bankruptcy judge analyzed § 42.0021 and came to the following well-reasoned conclusion:

> Section 42.0021(a) exempts both the assets in the account and the right to payment—the asset that is exempt is distributed to the account holder and is not transformed, but, instead, remains exempt under the IRA exemption statute. Thus, in this case, the Court concludes that the distribution of the exempt asset received by Moore is exempt under the specific language of subsection (a).
>
> . . . .
>
> [T]he exemption does not disappear when the account holder actually receives a distribution. *See* TEX. CIV. PRAC & REM. CODE § 31.002(f) . . . [T]he Court concludes that the distribution the debtor received from her IRA did not lose its exempt status simply because she received it.[27]

The *Moore* court also concluded that the 60-day period in subsection (c) did not create a "conditional" exemption that disappears retroactively, and that such an interpretation of § 42.0021(c) "is contrary to the Texas exemption scheme for IRAs."[28]

---

[24] *Wright v. Ford Motor Co.*, 508 F.3d 263, 269(5th Cir. 2007).

[25] *In re Moore,* Case No. 15-42046, 2016 WL 3704723 at *2 (Bankr. E.D. Tex. 2015) (*citing Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.,* 410 W.W.3d 843, 853 (Tex. 2012)).

[26] *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 651-52 (Tex. 2006).

[27] *In re Moore,* 2016 WL 3704723 at *3,5.

[28] *Id.* at *5.

After *Moore*, the Fifth Circuit issued its *Hawk*[29] opinion, which also was a Chapter 7 case. In *Hawk*, the Fifth Circuit stated:

> When the Hawks withdrew funds from the IRA, the Hawks' property interest changed from an interest in assets held in a retirement account to an interest in '[a]mounts distributed from a [retirement] account.' *See* TEX. PROP. CODE § 42.0021(c). But because § 1306(a)(1) applies only in Chapter 13 cases and no similar provision applies in a Chapter 7 case, there was no means by which the Hawks' newly acquired property interest could become part of the Chapter 7 estate.
>
> . . . .
>
> [I]f the Hawks held amounts recently distributed from their retirement account when they filed for bankruptcy, those funds would be subject to the applicable sixty-day limitation on the exemption. *See* TEX PROP. CODE § 42.0021. The Trustee could have objected to the exemption if the liquidated funds were not rolled over into another retirement account within sixty days.[30]

It appears that *Hawk* disagrees with *Moore's* interpretation and application of § 42.0021(c) to a distribution of exempt retirement funds. Therefore, even though this is a Chapter 13 case as opposed to a Chapter 7 case, this Court is bound by the Fifth Circuit's application of § 42.0021(c) as specified in *Hawk,* thereby requiring the Court to conclude that the 401k Funds lost their exempt status when the distributed funds were not rolled over into another retirement account within sixty days. Therefore, the Withdrawals became non-exempt property of the Debtor's bankruptcy estate pursuant to § 1306(a)(1).

Even if there is an argument that the statement in *Hawk* was not necessary to the Fifth Circuit's ruling and, as such, is dicta or can be distinguished, the Court does not need to decide if *Hawk* is controlling or if *Moore* correctly applies Texas law. As detailed below, if the 401k Funds lost their exempt status and the Withdrawals became property of the bankruptcy estate under § 1306(a)(1), the Court still denies both proposed modifications.

---

[29] *In re Hawk,* 871 F.3d 287 (5th Cir. 2017).

[30] *Id.* at 295-96.

**C.    Even if the Plan Modification or the Oral Plan Modification were feasible, in exercising its discretion, the Court denies both modifications.**

Section 1329(a) provides that a plan *may* be modified.[31] Accordingly, if a modification meets all of the requirements of § 1329, the Court still has discretion to approve or deny the modification.[32] Although § 1329 does not provide standards to guide courts in the exercise of their discretion, courts have held that a proposed modification should be "viewed in light of all the circumstances"[33] and upon consideration "of the two fundamental concepts of a fresh start for debtors and fairness to creditors."[34]

Given the Debtor's testimony, it is clear to the Court that she had a good-faith basis to use her exempt 401k Funds to pay the unexpected and unbudgeted medical and home-repair bills. Had the Debtor not suffered her medical issues or incurred home repair bills, then she would not have had a reason to withdraw the 401k Funds from her 401k Plan and such funds would have remained the Debtor's exempt asset, outside the reach of pre-petition creditors' claims.

Finally, even though the Debtor made the imprudent unilateral decision to spend the non-exempt Withdrawal proceeds from her 401k Plan to pay the medical and home-repair expenses in violation of her confirmed Plan,[35] the Court finds and concludes that the Debtor's actions were not made in bad faith or in reckless disregard of her obligations under the Bankruptcy Code, her Plan, or any other orders of the Court. With that said, the Debtor took a risk when she spent the

---

[31] *See* 11 U.S.C. § 1329(a).

[32] *See In re McAllister,* 510 B.R. at 430.

[33] *Id.* at 431; *see also In re Forte*, 341 B.R. 859, 870 (Bankr. N.D. Ill 2005) ("[T]he determination of a motion under § 1329 . . . properly depends on the fairness of the proposed modification, viewed in light of all the circumstances."); *In re Burgie*, 239 B.R. 406, 409(9th Cir. BAP 1999) ("[A] motion by a trustee to modify a chapter 13 plan is subject to the bankruptcy judge's discretion and good judgment.").

[34] *See In re McAllister* 510 B.R. at 431; *In re Forte* at 869.

[35] The Plan provides that: "Debtors shall not dispose of . . . any non-exempt property . . . prior to discharge, without consent of the Trustee or order of the Court after notice to the Trustee and all creditors." ECF No. 20. As noted in footnote 19 supra, the Debtor's actions could have resulted in the dismissal of her bankruptcy case under § 1307.

non-exempt Withdrawal proceeds without first obtaining Court approval. Her decision could have resulted in severe adverse consequences, including the dismissal of her bankruptcy case. Fortunately for the Debtor, based on the facts and circumstances in this case, the Debtor will not suffer such adverse consequences for her actions.

Based on the totality of the relevant facts and circumstances in this case and considering the concepts of a fresh start for the Debtor and fairness to her creditors, the Court finds and concludes, in the exercise of its discretion, that it is not appropriate to approve the Plan Modification or the Oral Plan Modification even if such modifications had satisfied the requirements of § 1329. Therefore, the Plan Modification and the Oral Plan Modification are hereby denied.

### IV.    CONCLUSION

For the reasons set forth above, the Court concludes that the Plan Modification and the Oral Plan Modification do not satisfy the requirements of § 1329. Alternatively, even had those modifications complied with the requirements of § 1329, the Court, in the exercise of its discretion, declines to approve either modification.

For all of the reasons stated above, it is therefore **ORDERED** that the Plan Modification and the Oral Plan Modification are **DENIED.**

### ### END OF ORDER ###